UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PALM BEACH DIVISION

NORTH AMERICAN COMPANY FOR LIFE
AND HEALTH INSURANCE,

   Plaintiff,

  vs.

MICHELLE CALDWELL and MICHAEL J.
HARNER, the latter in his capacity as trustee for
THE IRREVOCABLE LIFE INSURANCE
TRUST OF JUSTIN W. CALDWELL,

   Defendants.

Case No.

## COMPLAINT

North American Company for Life and Health Insurance ("North American") seeks a judicial declaration that, because Justin Caldwell ("Justin") committed suicide, $2 million in life insurance benefits are not payable as a result of his death.

### General Allegations

### The Policies

1. North American issued two policies insuring Justin's life in the cumulative amount of $2,000,000. North American issued the first on November 9, 2018 ("Policy '244") and the second on July 9, 2020 ("Policy '472") (together, the "Policies").

2. Policy '244 named The Irrevocable Life Insurance Trust of Justin W. Caldwell ("the Insurance Trust") as the owner and primary beneficiary ("Policy '244"). Michael J. Harner ("Harner") is the trustee of the Insurance Trust. Policy '244 provided a $1,000,000 death benefit, if payable.

3. On or about April 27, 2020, while Justin and his wife, Michelle Caldwell ("Michelle"), were living in Palm City, Florida, Harner assigned the Insurance Trust's ownership

1

rights and obligations under Policy '244 to Michelle. The Insurance Trust retained its status as the policy's primary beneficiary.

4. A true and correct copy of Policy '244 is attached to this complaint as Exhibit 1.

5. Policy '472 named Michelle as the owner and primary beneficiary. Policy '472 provided a $1,000,000 death benefit, if payable.

6. A true and correct copy of Policy '472 is attached to this complaint as Exhibit 2.

7. The Policies include the following clauses providing that no benefits are payable (other than a refund of premiums) if the insured, Justin, commits suicide within two years of the Policy Date:

### Section 3.4 of Policy '244:

3.4 SUICIDE – If the Insured commits suicide, while sane or insane, within two years from the Policy Date, Our liability is limited to an amount equal to the total premiums paid. We will pay this amount to the Beneficiary in one sum.

### Section 3.4 of Policy '472:

3.4 SUICIDE – If the Insured commits suicide, while sane or insane, within two years from the Policy Date, Our liability is limited to an amount equal to the total premiums paid, less any Policy Debt and Withdrawal amount. The Withdrawal amount includes Withdrawal Charges and Withdrawal Processing Fees applied at the time of the Withdrawal. We will pay this amount to the Beneficiary in one lump sum. See Section 6.12: Withdrawals and Section 6.13: Withdrawal Charge for details on Withdrawal Charges and Withdrawal Processing Fees.

If the Insured commits suicide, while sane or insane, within two years from the effective date of any increase in the Specified Amount, Our liability with respect to such increase is limited to the Cost of Insurance charged for such increase.

### Parties, Jurisdiction, and Venue

8. North American is and was at all times material to this action an Iowa corporation with its principal place of business located in West Des Moines, Iowa, and thus is and was a citizen of the state of Iowa. North American is and has been properly licensed and authorized to conduct business in the State of Florida and regularly conducts business within this judicial district.

9. Michelle is and was at all times material to this action a resident and citizen of the state of Florida, residing at 2062 SW Racquet Club Drive in Palm City, Florida. This Court has personal jurisdiction over Michelle because she is a citizen of the state of Florida who lives, works, and conducts business in Florida.

10. Harner is and was at all times material to this action a resident and citizen of the state of New Mexico, residing at 1483 Morning Glory Road NE, Albuquerque, New Mexico. Pursuant to Fl. St. § 48.193(a)(1)(d), this Court has personal jurisdiction over Harner based on Harner's April 27, 2020 agreement with Michelle to assign the Insurance Trust's ownership rights and obligations under Policy '244 to Michelle. Michelle and Justin both resided in Florida at the time of this agreement. Upon entering into this April 27, 2020 agreement, Michelle (rather than the trust) was to insure Justin's life under Policy '244, preserving Harner's status as trustee-beneficiary under the policy. Harner and Michelle both purchased the Policies through a Florida-based sales producer, and upon information and belief, Harner has authorized Michelle to communicate with North American from her home and/or business in Florida in furtherance of Harner's claim for benefits under Policy '244.

11. Since this action seeks a declaration that no benefits are payable under the Policies other than a refund of premiums paid for the coverage, and each of the Policies provides a $1 million death benefit (if payable), the amount in controversy exceeds $75,000, exclusive of interest and costs.

12. Venue is proper in this district because the most substantial events giving rise to this action occurred within this judicial district, including, without limitation, the insured's death by suicide that gave rise to the claims for benefits and the filing of this action.

**Justin's Suicide**

13. At approximately 7:00 a.m. on October 8, 2020, the Martin County Sheriff's Office received an "armed and dangerous" 911 emergency call from Michelle. She reported that Justin was "suicidal," that he was in the family garage in possession of a rifle, a shotgun, and another firearm, that he was "in the process of loading the weapons," that he "wanted to die by law enforcement," and that he "wanted to commit suicide by cop."

14. "Suicide by cop" is a common method of committing suicide whereby an individual intentionally ends his life by purposefully provoking law enforcement personnel into fatally shooting him. According to the Police Executive Research Forum located in Washington, D.C., as many as 10% of the 1,000 fatal shootings by police each year are the result of "suicide by cop."

15. Martin County Sheriff Office personnel were dispatched to the Caldwell residence. Michelle told officers on the scene that Justin had become upset after learning that Michelle wanted a divorce, that Justin was in the garage loading multiple types of firearms, and that Justin was "threatening suicide by cop." Michelle warned law enforcement personnel that Justin "wants to die," and that he intended to start shooting until law enforcement shot him.

16. Shortly after this exchange with Michelle, SWAT team personnel from the Sheriff's Office tried to persuade Justin to relinquish his weapons and surrender himself peacefully to law enforcement personnel. They issued multiple commands for Justin to put down his weapons and to refrain from picking up his weapons. According to the reported account from Major John Budensiek, Director of Law Enforcement for the Sheriff's Office, Justin underwent a "complete change in his disposition" during the SWAT team's efforts to negotiate for his surrender.

17. Major Budensiek reported that Justin suddenly began "swearing at [the SWAT team members], and, turning around, he started to run back to the truck." Although the SWAT team

fired non-lethal rounds at Justin to prevent him from "getting back to the gun," Justin ran to the truck where he had placed his weapon, grabbed the rifle, spun around, and lifted the rifle to shoot the deputies, "at which point they were forced to defend themselves," according to Budensiek.

18. Despite the SWAT team's warnings and efforts to deescalate the situation, and consistent with Justin's stated intention to commit "suicide by cop," Justin's intentional provocations prompted law enforcement personnel to shoot and kill him.

19. The events recounted in the Sheriff's Office reports of witness statements – including statements from Michelle and her daughters – confirm that Justin intentionally and purposefully committed suicide through the instrumentality of "suicide by cop."

20. This recounting of events is corroborated by multiple media accounts of statements attributed to Michelle, additional family members, and law enforcement officials and witnesses on the scene.

21. Among other statements, Justin's mother, Christy Caldwell, reportedly told reporters that Justin had called her at 3 a.m. the morning of the shooting, "saying good-bye and that he wanted to 'go to a better place to be with his grandparents.'"

22. Ms. Caldwell reportedly stated that Michelle had confronted Justin in the garage later that morning, asking him if he was o.k., to which Justin responded, "No, I'm waiting for the police to come and kill me," prompting Michelle to call 911. Based on Michelle's and Justin's statements to her, Ms. Caldwell stated, "I believe he wanted [the police] to put him out of his pain."

23. North American understands there is substantial additional evidence demonstrating that, through his actions, Justin intended to and did commit suicide through the instrumentality of "suicide by cop." However, authorities have informed North American that they will not release this evidence until after the grand jury impaneled to review the events of October 8, 2020, has

completed its work and has made its findings. Because its best efforts to secure this additional evidence have been unsuccessful due to circumstances beyond its control, North American will pursue this evidence through discovery in this case.

24. Regardless, substantial, currently available evidence demonstrates that Justin intended to and did commit suicide through the instrumentality of "suicide by cop." Accordingly, North American has concluded that no benefits are payable under the Policies (other than the refund of premiums paid for coverage) in light of suicide clauses in the Policies.

### Demand for Payment of Death Benefits

25. Despite this evidence, Harner, in his capacity as trustee of the Insurance Trust, and Michelle have demanded that North American pay the $2,000,000 in death benefits provided by the Policies, if payable.

26. On November 4, 2020, North American received the two beneficiaries' claims for the payment of death benefits under Policies '244 and '472. In her claim materials, Michelle referred to her husband's "unnecessary and violent killing."

27. On December 7, 2020, Michelle wrote to North American, disputing the credibility of news reports and the accuracy of quotes attributed to her.

28. On March 4, 2021, Michelle wrote to North American on her own behalf and on behalf of Harner, in furtherance of their respective claims for benefits.

29. Although North American has substantial, compelling evidence demonstrating that the $2 million in death benefits are not payable as a result of Justin's suicide, the company had intended to secure the additional physical evidence referenced in the law enforcement reports already received and reviewed by the company.

30. Because law enforcement authorities have provided no date certain for providing the company access to this additional physical evidence, North American had filed this action to obtain a judicial declaration that the $2 million cumulative death benefits under the Policies are not payable because Justin committed suicide.

### Count I –Declaratory Judgment

31. All prior paragraphs are incorporated by reference.

32. North American has concluded that Justin purposefully ended his life and committed suicide through the method and instrumentality of "suicide by cop," *i.e.*, by intentionally provoking law enforcement into fatally shooting him, and thus that no death benefits are payable under the Policies (other than a refund of the premiums paid for the coverage).

33. Despite the conclusive evidence establishing Justin's death by suicide, Michelle and Harner continue to maintain that North American must pay the $2 million cumulative death benefits under the Policies.

34. Pursuant to 28 U.S.C. § 2201, there is an actual controversy between and among North American, Michelle, and Harner, entitling North American to a declaration of the rights and responsibilities of the parties under the Policies.

35. Specifically, North American requests this Court to enter a judgment declaring that no benefits are payable to any person under Policies '244 or '472 (other than the refund of the premiums paid for the coverage) based on the terms and conditions of the Policies, including the suicide clauses in the Policies.

36. North American has written to Michelle and Harner, advising them of the disposition of their claim for benefits, and tendering the refund of premiums payable under the Policies as a result of the insured's suicide.

WHEREFORE, North American respectfully requests that this Court enter a judgment declaring that no benefits are payable under Policies '244 and '472 to Michelle, to Harner, or to any other person other than the refunded premiums already tendered to the beneficiaries and awarding North American such other or further relief as this Court deems appropriate, just, and equitable.

## JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 28, North American demands a trial by jury of all issues so triable.

Dated: May 7, 2021

Respectuflly submitted,

/s/ Brett J. Preston
Brett J. Preston (FBN: 603716)
brett.preston@hwhlaw.com
michelle.armstrong@hwhlaw.com
HILL, WARD & HENDERSON, P.A.
101 East Kennedy Blvd., Suite 3700
Post Office Box 2231
Tampa, Florida 33601
(813) 221-3900 (Telephone)
(813) 221-2900 (Facsimile)

GODFREY & KAHN, S.C.
Paul F. Heaton, Wisconsin Bar No. 1000858
(pro hac vice application forthcoming)
Nicholas Bezier, Wisconsin Bar No. 1101618
(pro hac vice application forthcoming)
833 East Michigan Street, Suite 1800
Milwaukee, WI 53202-5615
Telephone:  414-273-3500
Facsimile:  414-273-5198
Email: pheaton@gklaw.com
          nbezier@gklaw.com

*Attorneys for Plaintiff North American Company for Life and Health Insurance*