# UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

January 12, 2023

Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

FILED BY ___ JE ___ D.C.

Jan 12, 2023

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

Appeal Number: 22-10534-BB
Case Style: North American Company for Life and Health Insuran v. Michelle Caldwell, et al
District Court Docket No: 2:21-cv-14197-AMC

A copy of this letter, and the judgment form if noted above, but not a copy of the court's decision, is also being forwarded to counsel and pro se parties. A copy of the court's decision was previously forwarded to counsel and pro se parties on the date it was issued.

The enclosed copy of the judgment is hereby issued as mandate of the court. The court's opinion was previously provided on the date of issuance.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Lois Tunstall
Phone #: (404) 335-6191

Enclosure(s)

MDT-1 Letter Issuing Mandate

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 22-10534

_____

NORTH AMERICAN COMPANY FOR LIFE AND HEALTH INSURANCE,

                                          Plaintiff-Counter Defendant
                                                     -Appellant,

*versus*

MICHELLE CALDWELL,

MICHAEL J. HARNER,

the latter in his capacity as trustee for THE IRREVOCABLE LIFE INSURANCE TRUST OF JUSTIN W. CALDWELL,

                                      Defendants-Counter Claimant
                                                  -Appellees.

_____

ISSUED AS MANDATE: 01/12/2023

Case 2:21-cv-14197-AMC   Document 45   Entered on FLSD Docket 01/12/2023   Page 3 of 15
USCA11 Case: 22-10534   Document: 43-2   Date Filed: 01/12/2023   Page: 2 of 2

2                                                                                          22-10534

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:21-cv-14197-AMC

_____

JUDGMENT

It is hereby ordered, adjudged, and decreed that the opinion issued on this date in this appeal is entered as the judgment of this Court.

Entered: December 14, 2022

For the Court: DAVID J. SMITH, Clerk of Court

[PUBLISH]

# In the
# United States Court of Appeals
# For the Eleventh Circuit

_____

No. 22-10534

_____

NORTH AMERICAN COMPANY FOR LIFE AND HEALTH IN-SURANCE,

                                Plaintiff - Counter Defendant - Appellant,

*versus*

MICHELLE CALDWELL,
MICHAEL J. HARNER,
the latter in his capacity as trustee for THE IRREVOCABLE LIFE INSURANCE TRUST OF JUSTIN W. CALDWELL,

                                Defendants - Counter Claimant - Appellees.

_____

Case 2:21-cv-14197-AMC   Document 45   Entered on FLSD Docket 01/12/2023   Page 5 of 15
USCA11 Case: 22-10534   Document: 41-1   Date Filed: 12/14/2022   Page: 2 of 10

2                          Opinion of the Court                    22-10534

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:21-cv-14197-AMC

_____

Before WILLIAM PRYOR, Chief Judge, ROSENBAUM and MARCUS, Circuit Judges.

WILLIAM PRYOR, Chief Judge:

This appeal requires us to decide whether a life-insurance policy excludes from coverage a death resulting from suicide-by-cop. North American Company for Life and Health Insurance issued two policies for the life of Justin Caldwell that excluded "suicide" from coverage. According to the insurance company's complaint, Justin successfully carried out a plan to provoke police officers to shoot and kill him. North American sought a declaratory judgment that it did not owe the policies' beneficiaries. But the district court ruled that Justin died "as a result of being shot by another person," not "suicide," and granted a judgment on the pleadings in favor of the beneficiaries. Because the ordinary meaning of "suicide" includes suicide-by-cop, we vacate and remand.

## I. BACKGROUND

In an appeal from a judgment on the pleadings in favor of the defendant, we accept the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Perez v. Wells Fargo N.A.*, 774 F.3d 1329, 1335 (11th Cir. 2014).

Case 2:21-cv-14197-AMC   Document 45   Entered on FLSD Docket 01/12/2023   Page 6 of 15
USCA11 Case: 22-10534   Document: 41-1   Date Filed: 12/14/2022   Page: 3 of 10

22-10534               Opinion of the Court                3

North American issued two insurance policies for the life of Justin Caldwell. On November 9, 2018, it issued a policy that named an irrevocable trust managed by trustee Michael Harner as beneficiary. On July 9, 2020, it issued a policy that named Michelle Caldwell, Justin's wife, as beneficiary. Each policy provided a $1 million death benefit. Each also contained an essentially identical clause that excluded suicide from coverage under the policy. That clause read, "SUICIDE — If the Insured commits suicide, while sane or insane, within two years from the Policy Date, Our liability is limited to an amount equal to the total premiums paid."

On October 8, 2020, Justin began showing signs of suicidal intent after learning that Michelle wanted a divorce. According to his mother, Justin called his parents to say goodbye at 3:00 a.m. Later that morning, he told Michelle that he was "waiting for the police to come and kill [him]." And around 7:00 a.m, Michelle called 911 to report "that Justin was 'suicidal,' that he was in the family garage in possession of a rifle, a shotgun, and another firearm, that he was 'in the process of loading the weapons,' that he 'wanted to die by law enforcement,' and that he 'wanted to commit suicide by cop.'"

Police officers soon arrived at Justin and Michelle's residence, where Michelle warned them that Justin "want[ed] to die" and "intended to start shooting until law enforcement shot him." Officers tried to de-escalate the situation by urging Justin to surrender peacefully. In response, Justin cursed at the officers and ran to his truck to retrieve his rifle. The officers fired non-lethal rubber

Case 2:21-cv-14197-AMC   Document 45   Entered on FLSD Docket 01/12/2023   Page 7 of 15
USCA11 Case: 22-10534   Document: 41-1   Date Filed: 12/14/2022   Page: 4 of 10

4                       Opinion of the Court                   22-10534

bullets to deter him, but Justin reached the truck, "grabbed the rifle, spun around, and lifted the rifle to shoot the [officers]." The officers then shot and killed Justin.

After the beneficiaries claimed the death benefits, North American filed an action against them for a declaratory judgment "that the $2 million cumulative death benefits under the Policies are not payable because Justin committed suicide." In a motion for a judgment on the pleadings, the beneficiaries argued that "the entire lawsuit is predicated on [North American's] erroneous position that the contract term 'suicide' is synonymous with the expression 'suicide by cop,' which is a term of art that actually refers to justifiable homicide." The district court agreed that "[t]he plain meaning of the term 'suicide' encompasses the act of killing oneself—not the killing of a person by another" and granted the motion.

## II. STANDARD OF REVIEW

"We review *de novo* an order granting judgment on the pleadings." *Perez*, 774 F.3d at 1335.

## III. DISCUSSION

We must determine whether the word "suicide" in Justin's life insurance policies describes Justin's behavior when he intentionally provoked police officers to kill him—that is, when he committed what is colloquially known as suicide-by-cop. Because the insurance policies were issued in Florida to a Floridian, Florida law controls. *See Travelers Indem. Co. v. PCR Inc.*, 326 F.3d 1190, 1193

Case 2:21-cv-14197-AMC   Document 45   Entered on FLSD Docket 01/12/2023   Page 8 of 15
USCA11 Case: 22-10534   Document: 41-1   Date Filed: 12/14/2022   Page: 5 of 10

22-10534                Opinion of the Court                 5

(11th Cir. 2003). Under Florida law, the "terms of an insurance policy must be construed to promote a reasonable, practical and sensible interpretation consistent with the intent of the parties." *U.S. Fire Ins. Co. v. Pruess*, 394 So. 2d 468, 470 (Fla. Dist. Ct. App. 1981). We look to the "plain and unambiguous meaning" of the terms "as understood by the man-on-the-street." *State Farm Fire & Cas. Co. v. Castillo*, 829 So. 2d 242, 244 (Fla. Dist. Ct. App. 2002) (citation and quotation marks omitted). So the ordinary meaning of "suicide" governs our inquiry. Antonin Scalia & Bryan A. Garner, *Reading Law* § 6, at 69 (2012) ("The ordinary-meaning rule is the most fundamental semantic rule of interpretation.").

To our knowledge, no American court has decided this question in a precedential opinion, so we write on a clean slate. The beneficiaries submit that suicide is "the first person act of taking one's own life." (Cleaned up.) According to the beneficiaries' argument, the method matters in that a person commits suicide only when he dies by his own hand. North American favors a broader definition that includes a person's act when he intends to die and achieves that end.

We agree with North American. A death is a suicide when a person intentionally causes his own death. As the Florida Supreme Court put it, "the words death 'by his own hand or act' should not be construed literally, but to mean death as a result of an intent on the part of the insured to take his own life." *Gulf Life Ins. Co. v. Nash*, 97 So. 2d 4, 6 (Fla. 1957). The requirements for a suicide are

Case 2:21-cv-14197-AMC   Document 45   Entered on FLSD Docket 01/12/2023   Page 9 of 15
USCA11 Case: 22-10534   Document: 41-1   Date Filed: 12/14/2022   Page: 6 of 10

6                          Opinion of the Court                    22-10534

a person's intent to die, his voluntary act on that intent, and his resultant death. The specific method is irrelevant.

English-language and legal dictionaries confirm that the ordinary meaning of "suicide" covers any method used by someone to end his own life, including the provocation of an officer into shooting him. Suicide is an "[a]ct or an instance of taking one's own life voluntarily and intentionally." *Suicide*, WEBSTER'S NEW INT'L DICTIONARY (2d ed. 1959); *see also Suicide*, AM. HERITAGE DICTIONARY OF THE ENG. LANGUAGE (5th ed. 2011) ("The act or an instance of intentionally killing oneself"); *Suicide*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The act of taking one's own life"); *Suicide*, OXFORD ENG. DICTIONARY (3d ed. 2020) ("The action or an act of taking one's own life"); *Suicide*, WEBSTER'S NEW INT'L DICTIONARY (3d ed. 1993) ("The act or an instance of taking one's own life voluntarily and intentionally"). Under all these definitions, a person must do some act to commit suicide, but no definition restricts the meaning to only a limited set of qualifying acts that involve no third parties, such that Justin's actions would be excluded. *See also* Bryan A. Garner, *Suicide*, GARNER'S DICTIONARY OF LEGAL USAGE 861 (3d ed. 2011) ("*Suicide* and *self-killing* are broad terms that include every instance in which a person causes his or her own death within the legal rules of causation."). In other words, these definitions do not require that the suicidal act be the final, fatal blow. Even more persuasively, definitions of the specific term "suicide-by-cop" confirm that it is a type of suicide. *See, e.g.*, *Suicide-by-cop*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("*Slang*. A form of suicide

Case 2:21-cv-14197-AMC   Document 45   Entered on FLSD Docket 01/12/2023   Page 10 of 15
USCA11 Case: 22-10534    Document: 41-1    Date Filed: 12/14/2022    Page: 7 of 10

22-10534               Opinion of the Court                    7

in which the suicidal person intentionally engages in life-threatening behavior to induce a police officer to shoot the person"); *Suicide by cop*, OXFORD ENG. DICTIONARY (3d ed. 2020) ("[A] method of taking one's own life").

References to suicide-by-cop in other material, such as scientific journals and the news media, make clear that people from many walks of life understand the word "suicide" to cover Justin's actions. *See, e.g.*, Ralph H. de Similien & Adamma Okorafor, Case Report, *Suicide by Cop: A Psychiatric Phenomenon*, 12 AM. J. PSYCHIATRY RESIDENTS' J. 20, 21 (2017) ("Suicide by cop is a form of suicide, and those who have attempted or wish to attempt it should be approached as suicidal."); Israel Salas-Rodriguez, *What Does Suicide by Cop Mean?*, U.S. SUN (Apr. 24, 2021), https://www.thesun.com/news/2765518/meaning-of-the-term-suicide-by-cop-means ("Suicide by cop or suicide by police is a suicide method . . . ."). American courts, including an appellate court in Florida, share this understanding too, although they have not previously applied it to life insurance policies. *See, e.g.*, *Sullivan v. State*, 898 So. 2d 105, 106 n.1 (Fla. Dist. Ct. App. 2005) ("'Suicide-by-cop,' also known as 'police-assisted suicide,' is 'a form of suicide . . . .'" (citation omitted) (alteration adopted)); *Hainze v. Richards*, 207 F.3d 795, 797 n.1 (5th Cir. 2000) ("'Suicide by cop' refers to an instance in which a person attempts to commit suicide by provoking the police to use deadly force."). And common sense supports this understanding. The existence of the term "suicide-by-cop" acknowledges that a person who induces an officer to shoot

Case 2:21-cv-14197-AMC   Document 45   Entered on FLSD Docket 01/12/2023   Page 11 of 15
USCA11 Case: 22-10534   Document: 41-1   Date Filed: 12/14/2022   Page: 8 of 10

8                      Opinion of the Court                   22-10534

him has chosen the officer as his instrument in the same way that someone else might have chosen a noose or a needle.

Even if the authorities available to us were less clear, the broader definition of "suicide" would still be most "consistent with the intent of the parties" to the life insurance policies. *See Pruess*, 394 So. 2d at 470. Life insurers do not make payouts when a person commits suicide for the same reason that home insurers do not pay an arsonist who burns down her own house. As the American Council of Life Insurers explained in an amicus brief, "it is clearly in no one's interest to create a financial incentive for someone to take their own life." Liability would thwart the purpose of insurance, which is to protect the insured from "unforeseen events rather than . . . events that are planned." So the question in determining whether Justin committed suicide as understood by the parties when they contracted for life insurance is whether Justin planned to end his own life when he provoked the police to kill him. As even the beneficiaries acknowledge, if we construe the facts in North American's favor, we must assume that he did.

As far as we can tell, the crux of the beneficiaries' objection to this conclusion is that Justin took his life *indirectly*. Under their reasoning, that an officer fired the deadly bullet sufficiently detaches Justin's death from his intent to die such that his death falls outside the ambit of "suicide." Indeed, the beneficiaries assert that these events are closer to homicide than suicide. They cite to a Maryland decision that, although not involving a suicide-by-cop, opined about how it should be classified: "[W]hen one incites a

Case 2:21-cv-14197-AMC   Document 45   Entered on FLSD Docket 01/12/2023   Page 12 of 15
USCA11 Case: 22-10534   Document: 41-1   Date Filed: 12/14/2022   Page: 9 of 10

22-10534                Opinion of the Court                9

police officer to use deadly violence, we are . . . presented with justifiable homicide, if the officer's use of deadly force is found to be reasonable . . . . But [we are not] presented with suicide, for the death occurred at the hands of another." *Fister ex rel. Est. of Fister v. Allstate Life Ins. Co.*, 783 A.2d 194, 202 (Md. 2001). This dictum anomalously invents a directness requirement for suicide not present anywhere else. After all, if a man threw himself before a train, nobody would argue that the conductor had committed homicide. *Cf. Vantran Indus., Inc. v. Ryder Truck Rental, Inc.*, 890 So. 2d 421, 426 (Fla. Dist. Ct. App. 2004) (discussing the "act of committing suicide by jumping in front of a fifty-thousand pound tractor-trailer traveling at seventy miles per hour").

There is no material distinction. Police officers are trained to, and have little choice but to, use deadly force to stop a civilian who threatens them, their fellow officers, and the public at large. *See* FLA. STAT. § 782.02 (2022). A civilian, aware of this fact, threatens the officers to provoke this predictable and lethal response in the same way that the man who throws himself before a train anticipates the predictable, lethal outcome of being run over. In both cases, a person intentionally causes his own death, even if an external force delivers the fatal blow. In other words, he commits "suicide."

To be clear, we do not decide that the ordinary meaning of "suicide" covers all imaginable instances of suicide-by-cop. Indeed, many instances may require factual determinations regarding the decedent's intent or actions. But here, where the beneficiaries

Case 2:21-cv-14197-AMC   Document 45   Entered on FLSD Docket 01/12/2023   Page 13 of 15
USCA11 Case: 22-10534   Document: 41-1   Date Filed: 12/14/2022   Page: 10 of 10

10                     Opinion of the Court                  22-10534

agree with the allegations in North American's complaint due to the procedural posture of the case, no factual question exists. The ordinary meaning of "suicide" certainly covers Justin's specific behavior in pointing his gun at police officers to provoke them into shooting and killing him as part of his plan to end his own life. The district court erred in ruling to the contrary.

## IV. CONCLUSION

We **VACATE** the judgment against North American and **REMAND** for further proceedings consistent with this opinion.

# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

December 14, 2022

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 22-10534-BB
Case Style: North American Company for Life and Health Insuran v. Michelle Caldwell, et al
District Court Docket No: 2:21-cv-14197-AMC

Electronic Filing
All counsel must file documents electronically using the Electronic Case Files ("ECF") system, unless exempted for good cause. Although not required, non-incarcerated pro se parties are permitted to use the ECF system by registering for an account at www.pacer.gov. Information and training materials related to electronic filing are available on the Court's website.

Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the Criminal Justice Act (CJA) must submit a voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for writ of certiorari (whichever is later) via the eVoucher system. Please contact the CJA Team at (404) 335-6167 or cja_evoucher@ca11.uscourts.gov for questions regarding CJA vouchers or the eVoucher system.

Pursuant to Fed.R.App.P. 39, costs taxed against the appellee.

Please use the most recent version of the Bill of Costs form available on the court's website at www.ca11.uscourts.gov.

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Tonya L. Richardson, BB at 404-335-6130.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Djuanna H. Clark
Phone #: 404-335-6151

OPIN-1A Issuance of Opinion With Costs