UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

CASE NO. 21-14197-CIV-CANNON/McCabe

**NORTH AMERICAN COMPANY
FOR LIFE AND HEALTH INSURANCE**,

    Plaintiff,
v.

**MICHELLE CALDWELL**
and **MICHAEL J. HARNER**,
the latter in his capacity as trustee for
**THE IRREVOCABLE LIFE INSURANCE
TRUST OF JUSTIN W. CALDWELL**,

    Defendants.
_____/

**ORDER REJECTING REPORT AND RECOMMENDATION; DENYING PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT; AND LIFTING TEMPORARY STAY**

**THIS CAUSE** comes before the Court upon Plaintiff's Motion for Summary Judgment (the "Motion") [ECF No. 74]. On April 23, 2024, following referral [ECF No. 87], Magistrate Judge McCabe issued a report recommending that the Motion be granted (the "Report") [ECF No. 108]. Plaintiff filed a Notice of Non-Objection [ECF No. 109], Defendants filed objections to the Report [ECF No. 111], and Plaintiff responded to Defendants' objections [ECF No. 113]. The Court has reviewed the Report and the full record. Following a comprehensive review, the Court ultimately determines that a jury trial is warranted to evaluate the contested factual question whether Justin Caldwell, the deceased Insured, formed the requisite suicidal intent and committed a voluntary act on that intent sufficient to trigger the suicide exclusion in the subject insurance policies. Accordingly, the Report [ECF No. 108] is **REJECTED**; the Motion [ECF No. 74] is **DENIED**; and the temporary stay on calendar call and trial is **LIFTED** [ECF No. 114].

CASE NO. 21-14197-CIV-CANNON/McCabe

**RELEVANT BACKGROUND**

This Order incorporates the undisputed facts as detailed in the Report [ECF No. 108 pp. 3–9]. A few additional contextual facts pertinent to the Insured's intent on the date in question are referenced in the Discussion below. For ease of understanding, Michelle Caldwell is the Insured's wife and one of the named Defendants in this case, and both of the subject life insurance policies contain coverage exclusions for "suicide" [ECF No. 1-4 p. 11; ECF No. 1-5 p. 20]. In May 2021, Plaintiff denied Defendants' claim for death benefits on the policies after concluding that the Insured died via "suicide-by-cop" [ECF Nos. 89, 90].

Earlier in this proceeding following an appeal of the Court's Order granting Defendants' Motion for Judgment on the Pleadings [ECF No. 37], the Eleventh Circuit concluded that suicide-by-cop falls within the traditional definition of "suicide" in the subject policies. *N. Am. Co. for Life & Health Ins. v. Caldwell*, 55 F.4th 867 (11th Cir. 2022). In reaching its decision, the Eleventh Circuit described three requirements for a legal suicide: (1) a person's intent to die; (2) his voluntary act on that intent to die; and (3) his resultant death. *Id.* at 870. Whether a death amounts to a suicide depends on the facts of the particular case, including the facts regarding a decedent's "intent or actions." *Id.* at 871 ("[W]e do not decide that the ordinary meaning of 'suicide' covers all imaginable instances of suicide-by-cop. Indeed, many instances may require factual determinations regarding the decedent's intent or actions.")].

**STANDARD FOR REVIEWING MAGISTRATE JUDGE'S REPORT**

To challenge the findings and recommendations of a magistrate judge, a party must file specific written objections identifying the portions of the proposed findings and recommendation to which objection is made. *See* Fed. R. Civ. P. 72(b)(3); *Heath v. Jones*, 863 F.2d 815, 822 (11th Cir. 1989); *Macort v. Prem, Inc.*, 208 F. App'x 781, 784 (11th Cir. 2006). A district court reviews de novo those portions of the report to which objection is made and may accept, reject, or

modify in whole or in part, the findings or recommendations made by the magistrate judge. 28 U.S.C. § 636(b)(1). To the extent a party fails to object to parts of the magistrate judge's report, the Court may accept the recommendation so long as there is no clear error on the face of the record. *Macort*, 208 F. App'x at 784. Legal conclusions are reviewed de novo, even in the absence of an objection. *See LeCroy v. McNeil*, 397 F. App'x 554, 556 (11th Cir. 2010); *Cooper-Houston v. S. Ry. Co.*, 37 F.3d 603, 604 (11th Cir. 1994).

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact [such] that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); Fed R. Civ. P. 56(a). An issue of fact is "material" if it might affect the outcome of the case under the governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). It is "genuine" if the evidence could lead a reasonable jury to find for the non-moving party. *See id.*; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). At summary judgment, the moving party has the burden to prove the absence of a genuine issue of material fact, and all factual inferences are drawn in favor of the non-moving party. *See Allen v. Tyson Foods Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

The non-moving party's presentation of a "mere existence of a scintilla of evidence" in support of its position is insufficient to overcome summary judgment. *Anderson*, 477 U.S. at 252. "For factual issues to be considered genuine, they must have a real basis in the record." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1303 (11th Cir. 2009) (internal quotation marks omitted). Speculation or conjecture cannot create a genuine issue of material fact. *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1181 (11th Cir. 2005). The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604,

608 (11th Cir. 1991). In assessing whether the moving party has met this burden, the court must view the movant's evidence and all factual inferences arising from it in the light most favorable to the non-moving party. *Denney v. City of Albany*, 247 F.3d 1172, 1181 (11th Cir. 2001). Once the moving party satisfies its initial burden, the burden shifts to the non-moving party to come forward with evidence showing a genuine issue of material fact that precludes summary judgment. *Bailey v. Allgas, Inc.*, 284 F.3d 1237, 1243 (11th Cir. 2002); Fed. R. Civ. P. 56(e), (c). In that instance, a non-moving party's failure to produce evidence for an essential element of a claim warrants summary judgment in favor of the moving party. *Celotex Corp.*, 477 U.S. at 323.

## DISCUSSION

As the Report notes, resolving Plaintiff's Motion requires the Court to determine whether the evidence adduced in discovery creates a genuine factual dispute over whether the Insured intended to end his own life when he provoked the police to kill him [ECF No. 108]. *N. Am. Co. for Life & Health Ins.*, 55 F.4th at 871 ("[T]he question in determining whether Justin committed suicide as understood by the parties when they contracted for life insurance is whether Justin planned to end his own life when he provoked the police to kill him."). "As a general rule, a party's state of mind (such as knowledge or intent) is a question of fact for the factfinder, to be determined after trial." *Chanel, Inc. v. Italian Activewear of Fla.*, 931 F.2d 1472, 1476 (11th Cir. 1991); *see also Harlow v. Fitzgerald*, 457 U.S. 800, 816 (1982) (observing that "questions of subjective intent" can only "rarely be decided by summary judgment"). This is because "[t]he facts of the case will frequently permit a reasonable fact finder to make different inferences as to what was intended" or turn on the credibility of testimony concerning intent. 11 Moore's Federal Practice – Civil § 56.25 (2024).

The Report concludes that the record evidence so overwhelmingly shows that the Insured's actions were motivated by an intent to die that no reasonable jury could conclude otherwise [*see* ECF No. 108]. The Report also determines that a reasonable jury would reach this conclusion regardless of who carries the ultimate burden to prove whether the suicide exclusion applies [ECF No. 108 pp. 9–10].[1]

Although the matter is close, and although the disposition in this Order really tests what it means to create a "genuine dispute as to any material fact" under Rule 56, the Court ultimately concludes, following a de novo review, that a reasonable juror could conclude that the Insured did not intend to end his own life when he provoked the police to kill him. The Court reasons as follows.

First, as a starting point, the Report determines that the Insured initiated the suicide when he encountered police in the driveway, and that "once he left the garage, no reasonable jury could reach any conclusion except that he intended the predictable consequences of his action," i.e., that he intended to die through suicide-by-cop [ECF No. 108 pp. 13–14]. The Report thus appears to take the position that once the Insured stepped into the driveway, nothing he did after that point could undo the suicidal chain of events set previously into motion [ECF No. 108 pp. 13–14]. The Court rejects this categorical view of the record evidence. The Eleventh Circuit reasoned that suicide-by-cop falls within the traditional definition of suicide in part because civilians are aware that officers have little choice but to use deadly force to stop a civil who threatens them or others. *N. Am. Co. for Life & Health Ins.*, 55 F.4th 867, 871 (11th Cir. 2022) ("A civilian, aware of this fact [referring to police officers' training to use deadly force to stop a threatening civilian]

---

[1] Plaintiff's burden as the movant on summary judgment is to prove the absence of a genuine issue of material fact. *See* Fed. R. Civ. P. 56.

threatens the officers to provoke this predictable and lethal response in the same way that the man who throws himself before a train anticipates the predictable, lethal outcome of being run over."). Against that backdrop, the summary judgment record here is reasonably susceptible to a conclusion that the relevant point at which the Insured took the necessary action to trigger his death was not at the moment he first stepped into the driveway but instead when he aimed a rifle at law enforcement officers immediately preceding his death.[2] This holistic approach to the record evidence is consistent with the Eleventh Circuit's understanding of suicide-by-cop and leads the Court to consider the full scope of the Insured's actions. Accordingly, to the extent the Report concludes that the Insured's intent was sealed and irreversible at the moment he first exited the garage, the Court disagrees and evaluates the full evidence on intent accordingly.

Second, viewing all factual inferences in the light most favorable to the non-moving party, and without weighing conflicting evidence or making credibility determinations, there is a genuine issue of material fact as to whether the Insured had the intent to die prior to exiting his garage and walking onto the driveway in the direction of police. The following record evidence supports Defendants' contention that the Insured did not have an intent to end his own life prior to exiting

---

[2] The summary judgment record contains testimony from multiple officers that (1) they did not perceive the Insured as posing an immediate lethal threat until he pointed the rifle at police; (2) they are trained not to employ lethal force until met with a threat of lethal force; and (3) their initial response in these types of situations is to deescalate the situation, which they did in this case, with initial success, despite the Insured's erratic behavior and belligerent calls to be killed [ECF No. 71-23 pp. 11–15 (Officer Collazo noting that the Insured had not done anything to provoke a lethal response prior to pointing the rifle); ECF No. 82-8 p. 7 pp. 11–12 (Officer Kennedy explaining that he perceived "no clear threat" prior to the Insured grabbing the rifle); ECF No. 71-27 p. 13 (Officer Kukuvka noting efforts to deescalate and to avoid using lethal force); ECF No. 71-27 p. 13 (Officer Kukuvka rejecting notion that he would shoot a suspect because a suspect asked to be shot); ECF No. 71-17 pp. 10–12, 15 (Officer Diapoules noting prior experience working to deescalate unstable situations and then describing the Insured's initial cooperation); ECF No. 71-25 p. 33; ECF No. 82-7 p. 6 (Officer Hill recounting multiple commands directed at the Insured to put down the rifle before the police took lethal action); ECF No. 82-3 (Officer Romero explaining the SWAT team's effort to "deescalate" the situation).

the home: (1) while on the phone with the police negotiator, the Insured stated that he "ha[d] no other intentions" that day but to take his legally owned firearms and leave [ECF No. 71-7 p. 3]; (2) the Insured stated "why don't you guys leave me alone? I think I've explained to you that I'm not a nut . . . I'm sitting here cleaning my guns. I haven't hurt anyone" [ECF No. 71-7 pp. 13–14]; and (3) the Insured stated "[m]y wife told me that she is going to divorce me and I'm cleaning up my guns because you know what? I'm going out West and look and hunt for elk. That's it." [ECF No. 71-7 p. 14]. A reasonable jury could view this evidence as inconsistent with an intent to die. There is also the post-lawsuit testimony of Michelle Caldwell in which she appears to walk back or undermine the veracity of her earlier statements to police that the Insured was threatening suicide-by-cop [ECF No. 108 pp. 15–16; ECF No. 71-13 pp. 21–22 (stating that "Everything I did on that [911] call was not necessarily a clear depiction of my thoughts, my perceptions, nor of the reality of the situation, due to the fact I was in shock, complete and utter shock and fear," and adding that "a lot of the stuff I said was because of the stress, pressure, and it felt unreal")]. This credibility-laden testimony adds to the overall factual picture in this case and is sufficient—when viewed in combination with the above evidence—to create a genuine issue of material fact as to the Insured's intent before he left his home.

    Third, there is record evidence of intervening facts from which reasonable inferences can be drawn that, even if the Insured previously formed the requisite suicidal intent prior to entering the driveway, his intent and subsequent voluntary acts changed in a manner inconsistent with suicide. As Defendants point out, after the Insured exited the garage and walked down the driveway, he set the rifle down on the bed of his pickup truck and walked further down the driveway toward the police with his hands in the air [ECF No. 72 ¶¶ 10–11]. This evidence, viewed in the light most favorable to Defendants, could lead a reasonable juror to conclude that

7

the Insured, at that moment, abandoned his intent to die and voluntarily chose to surrender to law enforcement.[3] Similarly, a reasonable jury could find that if the Insured really wanted to die, he could have acted violently before walking away from his rifle with his hands in the air toward police [*see* ECF No. 71-13 p. 46 (testimony of Michelle Caldwell); ECF No. 71-15 p. 27 (testimony of Christy Caldwell); ECF No. 71-23 p. 17 (testimony of Officer Collazo)]. The undisputed facts also show that the Insured was shot in the back with a foam projectile prior to rushing back to the truck where the rifle was sitting [ECF No. 72 ¶ 12]. Defendants construe the Insured's final act of aiming the rifle as an act taken in self-defense, maintaining that such evidence creates a triable issue of fact about the Insured's intent [ECF No. 111 pp. 6–9]. Constrained by the summary judgment standard, the Court agrees. As the undisputed facts show, the Insured initially complied by walking to the end of the driveway after being asked by police to "come over here and talk to us" [ECF No. 72 ¶ 11]. The Insured then responded "F*ck that," turned around, and began walking back toward his home [ECF No. 72 ¶ 11]. At that point, as the Insured had his back toward law enforcement, the police fired a foam projectile at the Insured in an effort to disable him without deadly force, at which point the Insured started to run back toward his rifle at a rapid pace [ECF No. 72 ¶ 12]. There is no evidence indicating the Insured knew or could have known the foam projectile was non-lethal. Based on this record evidence, it would not be unreasonable to conclude that the Insured ran back to the rifle to protect himself after being struck by a foam projectile, not because he intended to die by suicide. Nor would it be outside the realm of reasonable dispute, even if unlikely, to infer that someone with a deep distrust in the police who is

---

[3] [ECF No. 71-23 pp. 11–12 ("Q: Did anything that [the Insured] said make you think he was threatening his own life." A: "No."); ECF No. 71-23 p. 12 ("When [the Insured] was yelling any of the things you heard him say, did you think he was trying to force police to shoot him?" A: "No."); ECF No. 71-25 p. 33 ("[The Insured] looked like he wasn't quite committed to pointing [the rifle] at us . . .  But he was still swinging it, just kinda nervously . . . .")].

struck with a projectile in the back, facing a group of armed police running toward him, will react in self-defense, vengeance, or defiance, separate from an intent to end his own life by provoking police to kill him.[4]

Finally, with respect to Plaintiff's response to Defendants' objections to the Report [ECF No. 113], the Court is satisfied that Defendants have met their burden as the nonmovants—through non-speculative evidence and inferences—to show a genuine issue of material fact regarding the Insured's state of mind and voluntary acts on that intent. This follows a careful review of the record and the Eleventh Circuit's decision earlier in this proceeding. A jury may well agree with Plaintiff that the Insured committed suicide-by-cop. But such decision and its associated credibility determinations should be made by a jury rather than by this Court as a matter of law.

## CONCLUSION

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1. The Report and Recommendation [ECF No. 108] is **REJECTED**.

2. Plaintiff's Motion for Summary Judgment [ECF No. 74] is **DENIED** for the reasons stated in this Order.

3. The temporary stay on remaining deadlines is **LIFTED** [ECF No. 114].

4. On or before **November 6, 2024,** the parties shall file a Joint Status Report with scheduling proposals, noting any disagreement separately.

---

[4] Record evidence shows that the Insured had previously indicated his distrust of the police prior to the driveway altercation [ECF No. 71-25 p. 19 (referring to the police as "murderers"); ECF No. 71-25 p. 14 (referring to police as "a bunch of thugs with guns that just want to shoot everyone"); ECF No. 82-8 p. 11 ("I know what you guys are here to do, take the shot.")].

CASE NO. 21-14197-CIV-CANNON/McCabe

**DONE AND ORDERED** in Chambers at Fort Pierce, Florida, this 22nd day of October 2024.

_____
**AILEEN M. CANNON**
**UNITED STATES DISTRICT JUDGE**

cc: counsel of record